## A91A0759. JARALLAH v. SCHWARTZ.
(413 SE2d 210)

Judge Arnold Shulman.
The appellant sued the appellee and three other defendants seeking damages for numerous alleged torts, including interference with contract, intentional infliction of emotional distress, defamation, fraud, invasion of privacy, and conspiracy, all arising from certain neuropsychological testing and evaluation which he had received in connection with a work-related head injury for which he had claimed workers' compensation benefits. The appellee is the psychologist who actually administered the tests and performed the evaluation in ques-

tion. The gist of the appellant's complaint appears to be that the appellee administered the tests and performed the evaluation under the false pretense of providing "cognitive rehabilitation treatment" for his head injury and thereafter communicated the results to others, including the workers' compensation carrier, without his consent or authority.

The appellee moved to dismiss the complaint based on the appellant's failure to file with it an expert's affidavit tending to show that he (the appellee) had committed an act of professional malpractice. See OCGA § 9-11-9.1 (a). The trial court granted this motion to the extent the complaint sought to recover damages for professional malpractice but denied it to the extent recovery was sought on the theories of unauthorized treatment and/or disclosure. Later on, however, the court granted summary judgment to the appellee with respect to these other claims, and the present appeal is from that order. Prior to granting summary judgment to the appellee, the trial court had granted summary judgment to the other three defendants in the case. An attempt by the appellant to appeal that ruling was dismissed by this court as untimely in *Jarallah v. Aetna Cas. &c. Co.*, 199 Ga. App. 592 (405 SE2d 510) (1991).

The appellant was referred to the appellee by his treating physician "for cognitive rehabilitation treatment, neuropsychological assessment, and anything else [the appellee], in his professional opinion, deemed necessary." Based on the results of the neuropsychological tests at issue, the appellee prepared a report which was not supportive of the appellant's claim for workers' compensation benefits. In an affidavit submitted in support of his motion for summary judgment, the appellee averred that he had given a copy of this report to the appellant and had reviewed his findings with him at the time. He stated that although the appellant indicated during this discussion that he understood the findings and did not disagree with them, he telephoned the following day to complain that the report was incorrect and should never have been written. The appellee stated that the appellant failed to keep his next appointment and that he (the appellee) later learned from the referring physician that the case had been transferred to a Dr. O'Hara at the appellant's request. Acting pursuant to instructions from the appellant's workers' compensation carrier, which was also named as a defendant in the present action, the appellee subsequently forwarded copies of his report and the underlying neuropsychological data to Dr. O'Hara and discussed his findings with her. He heard nothing further about the matter until he was served with the summons and complaint in the present action several months later.

1. The appellant contends that the trial court erred in failing to consider certain audiotape recordings of conversations between him-

self and the appellee which, he asserts, support his claims. However, no such audiotapes are contained in the record before us, nor does the record reflect that any such tapes were before the trial court at the time it ruled on the summary judgment motion. (While the appellee's counsel noted at the summary judgment hearing that the appellant had made reference to a tape recording in his response to the summary judgment motion and expressed concern that the appellant had "filed materials with this court with which we have not been served a copy of," there is no indication that such materials were in fact filed.) "It is the duty of the party asserting error to show it by the record; mere assertions of error in briefs cannot satisfy this duty. [Cit.]" *Harrell v. Louis Smith Mem. Hosp.*, 197 Ga. App. 189, 190 (1) (397 SE2d 746) (1990). Under the circumstances, this enumeration of error presents nothing for review.

2. The evidence before the trial court conclusively negated the appellant's allegations that the neuropsychological testing and evaluation were performed without his consent or that his consent, if given, was obtained through fraud. The appellant admitted in his deposition that the appellee discussed with him ahead of time the nature of the examination and evaluation he intended to perform, and there is no indication that the appellant ever voiced any objection to the appellee regarding any of the tests or procedures in question.

3. The evidence of record similarly negates the appellant's claim that the appellee violated his right to privacy by disclosing the results of the evaluation to Dr. O'Hara. The appellant has not suggested that the appellee provided psychological counseling to him, nor has he alleged that the evaluation contained privileged communications within the contemplation of OCGA § 43-39-16, which provides as follows: "The confidential relations and communications between a licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed." As previously indicated, the report was transmitted to Dr. O'Hara pursuant to a request from the insurance carrier which was handling the appellant's claim for workers' compensation benefits. Under OCGA § 24-9-40, a physician (other than a psychiatrist) is authorized to disclose medical information concerning a patient to the extent the patient "places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding." See generally *Gilmore v. State*, 175 Ga. App. 376 (333 SE2d 210) (1985). While the appellee is not a physician and was not, strictly speaking, providing "medical care" to the appellant, it appears that the test results in question were in the nature of medical information, and we can conceive of no reason under the circumstances for concluding that the appellee was under a greater restriction with regard to the disclos-

ure of this information than would have been the case had he been a physician. Under the circumstances, we hold that the appellee did not violate the appellant's privacy rights either by transmitting the records in question to the health care professional who took over the appellant's treatment or by discussing the case with her. Cf. OCGA § 34-9-202.

4. It follows from the foregoing that the appellant has no conspiracy claim. " ' "Where damage results from an act which, if done by one alone, would not afford [a] ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." ' [Cits.] Thus a 'conspiracy' to effect what one has a legal right to accomplish is not actionable. [Cit.]" *McElroy v. Wilson*, 143 Ga. App. 893, 895-896 (2) (240 SE2d 155) (1977).

5. All issues concerning the other three defendants named in the complaint were resolved in the companion appeal, *Jarallah v. Aetna Cas. &c. Co.*, supra, and need not be considered here.

*Judgment affirmed. Carley, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 28, 1991 —
RECONSIDERATION DENIED NOVEMBER 22, 1991 —

Taj Jarallah, *pro se.*
Freeman & Hawkins, Andrew H. Meyer, Neely & Player, Andrew J. Hamilton, for appellee.