**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0970. THE BEST JEWELRY MANUFACTURING CO., INC.
   et al. v. REED ELSEVIER INC. d/b/a LEXIS/NEXIS
   COURTLINK, INC. et al.

BRANCH, Judge.

In 2010, The Best Jewelry Manufacturing Company, Inc. ("plaintiff") filed this class action challenging Fulton County State Court's adoption of an electronic filing system administered by Reed Elsevier Inc., d/b/a Lexis/Nexis Courtlink ("Lexis"). In its second amended complaint,[1] filed in February 2014, plaintiff alleged inter alia that in 2008, some years after the adoption of e-filing, Lexis conspired with Fulton County to collect illegal fees and barred plaintiff from filing a motion in at least one

---

[1] The lengthy history of this suit prior to the filing of second amended complaint, including prior proceedings in both state and federal court, is not relevant to the issues before us. We note only that the Northern District of Georgia dismissed plaintiff's federal causes of action for failure to state any claim.

case by means of either the e-filing system or a public access terminal purportedly available for that purpose. After Fulton County and Lexis moved to dismiss the second amended complaint, the trial court granted the motion on the grounds of sovereign immunity, in which Lexis shared, and failure to state any claim. The trial court also denied plaintiff's motions to add the past and current clerks of Fulton County State Court as indispensable parties.

On this appeal, plaintiff asserts that the trial court erred when it granted the motion to dismiss because its second amended complaint pled facts sufficient to state claims that the e-filing and other fees imposed by Lexis[2] on litigants were illegal, that the e-filing system denied plaintiff its right under the Georgia Constitution to access to the state's courts, and that Lexis has committed the torts of money had and received and conversion, and conspiracy. Plaintiff also asserts that Lexis does not share in Fulton County's sovereign immunity, that the chief clerk of Fulton County State Court is a necessary party to the suit, and that the clerk does not have judicial or official immunity. We disagree with these contentions and therefore affirm.

---

[2] Plaintiff does not contest the grant of the motion to dismiss as to Fulton County.

"A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."

*Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014) (punctuation omitted), quoting *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). On appeal, we review a trial court's decision to grant or deny a motion to dismiss de novo. *Chandler v. Opensided MRI of Atlanta*, 299 Ga. App. 145 (682 SE2d 165) (2009).

So viewed, plaintiff's second amended complaint and the exhibits thereto, including an affidavit from counsel,[3] alleges that under local rules taking effect in 1999, Fulton County Superior Court made certain classes of cases subject to e-filing.

---

[3] See *Hendon Properties, LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005) ("Although considering matters outside the pleadings generally converts a motion to dismiss into a motion for summary judgment, a trial court may properly consider exhibits attached to and incorporated in the pleadings in considering a motion to dismiss for failure to state a claim for relief.") (footnotes omitted).

Effective June 1, 2006, the chief judge of Fulton County State Court issued a standing order requiring that certain types of civil cases be subject to fees "for access and electronic transmission of documents," which were "in addition to any charges associated with" the court's filing fees. The state court required litigants participating in these cases to enter into online subscriber agreements with the designated vendor Lexis "or use the public access terminal located at" the state court to upload filings. The state court also authorized Lexis to charge litigants fees in connection with their use of Lexis's "File & Serve" online application. The state court then promulgated local e-filing rules that directed court clerks to reject paper filings received in e-filing cases. The Georgia Supreme Court approved this program and its rules.

Pursuant to a written "File & Serve Agreement" with Lexis, plaintiff's counsel became an "advanced subscriber," defined as a user "billed for its use of File & Serve on a monthly basis . . . who is permitted to authorize [u]sers within its organization to whom File & Serve [u]ser IDs shall be issued." At the outset of the agreement appeared the following notice: "*[Lexis] File & Serve does not engage in the practice of law, nor is [Lexis] File & Serve part of the court system in which your lawsuit is pending.*" (Emphasis changed.) The agreement also provided that users would pay so-called "usage fees," defined as "those fees imposed by [Lexis] for use of File &

4

Serve"; that such fees might "vary based upon a number of factors including the State, Court, Case Type, Case Class, and features being used"; and that such fees "will be set forth on a project-specific basis and are subject to change from time to time." Local Rule 2-105 likewise provided that an e-filing services provider "may charge registered users additional fees to deliver, access, and use the service," and that such fees "shall be payable to [the provider] at the time of filing and are in addition to any statutory filing fees."

After the implementation of e-filing, litigants in designated cases were required to file by one of the following means: (1) online, and thus paying the usage fees assessed by Lexis concerning those filings;[4] (2) via the public access terminal (PAT) located in the clerk's office, at which litigants could scan and upload documents into the e-filing system at no charge; or (3) via paper filing to the clerk, along with a prepaid administrative scanning fee. As to those litigants refusing to take advantage of either e-filing or the PAT, the state court's Local Rule 2-115, which remained in effect throughout the period at issue,[5] provided as follows:

[4] E-filing usage fees ranged from $7 to $12 per filing, depending on the case type, with Lexis keeping all of these fees.

[5] The second amended complaint alleges that although the state court's local e-filing rules "have sunset [provisions] and were never made permanent," and although they have not been in effect since January 2011, the state court "continues to enforce the e-filing rules by rejecting paper filings mailed to the Clerk's officer and forcing all litigants to file all pleadings via File and Serve."

5

[A] litigant who [a] declines or refuses to use the PATs and files paper via mail to or at the counter of the State Court of Fulton County Clerk's Office[,] AND [b] declines or refuses to sign an affidavit that he or she does not have access to a personal computer will be charged an administrative scanning fee as follows: $5 for the first page of the document and $1 for each additional page of that document. The Clerk's Office will not scan said documents until the litigant has paid the fee in full and will scan and up-load the documents to [File & Serve] as time and work load allow.

As of 2014, if the clerk's office received a mailed or hand-delivered paper pleading to litigants without a scanning fee payment, it would return the pleading with the following notice:

This document is associated with an e-filed case. Therefore, it is being returned to you to scan/upload into the LexisNexis e-file system. If you are not a LexisNexis File and Serve subscriber or you do not have internet access, there is a Public Access Terminal available in the Fulton County State Court Clerk's Office . . . *You may use the Public Access Terminals to scan and upload your documents at no cost to you*. (Emphasis supplied.)

The second amended complaint, including counsel's attached affidavit, also alleges that in April 2008, plaintiff's counsel was unable to e-file a motion in a pending case as a result of being "locked out" of File & Serve for counsel's alleged

6

failure to pay usage fees. When counsel informed the clerk's office that he was locked out of File & Serve and requested permission to file paper pleadings, he was told that paper pleadings would not be accepted, but that the judge's staff "would file them electronically." When counsel attempted to file a set of proposed jury charges a few days later, he was again denied access, although "the judge offered to file them for [counsel]." There is no allegation or evidence that counsel accepted either of these offers or that he attempted to file a paper version of the pleading with a scanning fee. In the weeks that followed, Lexis customer service representatives repeatedly told counsel that he would be unable to e-file anything, including at the PAT, because his online account was delinquent (which it was not). Plaintiff also alleges that the cost of using the PAT, which required travel to the courthouse, "far exceeds the fees to file remotely" via File & Serve; that the PAT is inconvenient to use; and that it is "not a meaningful alternative" to mail filing in that it requires clerk assistance, considerable waiting time, and is often inoperable. Plaintiff does not allege, however, that it ever actually attempted to use the PAT and was unable to do so. In fact, plaintiff's counsel admits that he has "not previously used the PAT due to the associated logistical cost accompanying the access of the PAT, located in downtown Atlanta."

7

On the basis of these factual allegations, plaintiff asserted the following causes of action and sought damages, injunctive relief, and the certification of a class against Fulton County and Lexis for (1) violations of OCGA §§ 15-5-40 (stating that no clerk shall reject a filing for the reason that the filing is on letter-sized paper), 15-6-77 (concerning filing fees), and 50-29-12 (concerning approval and monitoring of electronic media projects by the Georgia Technology Authority), as well as Uniform Superior Court Rule 1.2 (concerning a court's power to enact rules which deviate from the Uniform Superior Court Rules); (2) a violation of plaintiff's right of access to the courts "guaranteed by the Georgia Constitution, our Supreme Court [and] OCGA § 1-2-6 (a) (6) (concerning a citizen's right to appeal to the courts); and (3) conversion and money had and received as to fees collected. Plaintiff also sought punitive damages, fees, and injunctive relief as to both the lack of court access and the imposition of fees. Fulton County and Lexis later moved to dismiss the complaint, and the trial court granted the motion on three grounds: because the complaint failed to plead facts sufficient to state a claim; because plaintiff had no private right of action as to any of the wrongs alleged; and because Fulton County was entitled to sovereign immunity, which Lexis shared. This appeal followed.

8

1. Plaintiff first argues that it has stated a viable claim as to Lexis's violations of OCGA §§ 15-6-77 (k) and 50-29-12 as well as Uniform Superior Court Rule 1.2.[6] We disagree because (a) plaintiff has not succeeded in pleading facts sufficient to show violations of these statutes and rules and (b) plaintiff has no private right of action as to any of them.

(a) (i) Plaintiff argues that Lexis's File & Serve fees violated OCGA § 15-6-77 (k), which provides: "No fees, assessments, or other charges may be assessed or collected except as authorized in this Code section or some other general law expressly providing for same." We disagree.

As a preliminary matter, we note that the File & Serve Agreement, Local Rule 2-105, and the trial court's standing orders in the matter all identify the File & Serve fees as "usage" fees imposed "in addition to any statutory filing fees." OCGA § 15-6-77 (e) (5) provides, moreover, that "[n]othing contained in this Code section shall be construed so as to prohibit the collection of any other costs authorized by law for postjudgment proceedings *or for any other services which the clerk or the sheriff*

---

[6] Plaintiff has not challenged the trial court's grant of the motion to dismiss as to Fulton County and has abandoned its claim that the court clerk violated OCGA § 15-5-40. We need only reach the question of Lexis's sovereign immunity, moreover, if we find that plaintiffs have successfully pled one or more claims, which it has not.

*shall perform*." (Emphasis supplied.) On its face, OCGA § 15-6-77 (e) (5) thus authorizes the clerk of a superior court, or its duly appointed agent, to collect costs for "services," which Local Rule 2-105 describes as "additional fees to deliver, access, and use the [e-filing] service." Plaintiff's mere assertion that the e-filing fees at issue are filing fees cannot survive Lexis's motion to dismiss when the pleadings and exhibits in this case, including the File & Serve agreement and Local Rule 2-105, conclusively show that they are usage fees.[7] See *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 134 (1) (709 SE2d 314) (2011) (dismissal of a claim under OCGA § 9–11–12 (b) (6) is appropriate where the allegations of the complaint "'disclose with certainty' that no set of facts consistent with the allegations could be proved that would entitle the plaintiff to the relief he seeks") (citation omitted).

Plaintiff seeks to forestall this conclusion by citing *Cotton v. Med-Cor Health Information Solutions*, 221 Ga. App. 609 (472 SE2d 92) (1996), in which we reversed a grant of a motion to dismiss a complaint alleging that a hospital had violated OCGA § 31-33-3 (a), which imposes "reasonable costs of copying and mailing [a] patient's [medical] record" on the party requesting the record. In *Cotton*, however, the records

---

[7] The availability of paper filing, pursuant to the payment of a scanning fee, also supports our determination that the e-filing fee was for scanning, not filing.

at issue were in the custody of the hospital, and the statute itself placed responsibility for providing copies to patients on the hospital. Id. at 610.[8] By contrast, neither the court clerks nor Lexis have any responsibility for preparing or delivering a party's filings to the courthouse, and the usage fees associated with the e-filing service do not amount to a filing fee. Further, plaintiff's counsel has averred that the judge or his staff twice offered to file papers electronically for him, but there is no allegation or evidence that counsel accepted either of these offers. For all these reasons, plaintiff has not pled facts sufficient to establish a violation of OCGA § 15-6-77 (k).

(ii) Plaintiffs also argue that Fulton County State Court's failure to obtain approval from and submit progress reports to the Georgia Technology Authority amounts to a violation of OCGA § 50-29-12. We disagree.

OCGA § 50-29-12 provides in relevant part:

(a) The General Assembly desires to promote economic development and efficient delivery of government services by encouraging state governmental agencies and private sector entities to conduct their business and transactions using electronic media.

---

[8] *Cotton* is also physical precedent only, which means that it is not properly cited as binding precedent. See Court of Appeals Rule 33 (a).

(b) All state agencies, authorities, and boards are authorized to establish pilot projects, which are to serve as models for the application of technology such as electronic signatures, through public and private partnerships with private companies providing such technology related services. Such pilot projects shall be approved by the Georgia Technology Authority. . . . *Any private partner chosen for these pilot projects may establish user fees to pay for the cost of these services so that no state funds would be required*.

(c) State agencies establishing pilot projects shall submit quarterly progress reports on such projects to the Georgia Technology Authority. The authority shall monitor the success of such pilot projects and provide technical assistance to the extent that resources of the authority are available.

(Emphasis supplied.)

As a preliminary matter, we note that OCGA § 50-29-12 not only establishes a policy of encouraging projects such as the e-filing system at issue here, but also explicitly authorizes a private party such as Lexis to "establish user fees to pay for the cost of [the] services so that no state [or county] funds would be required." Id. at (b). But even assuming that this e-filing system amounted to a "pilot project," the statute applies only to "state agencies," and we have seen no authority suggesting that Fulton County State Court is such an entity for purposes of this or a related statute. On the

12

contrary, the judicial branch of state government has "the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities." *McCorkle v. Judges of Superior Court of Chatham County*, 260 Ga. 315, 316 (392 SE2d 707) (1990) (citations and punctuation omitted). The Fulton County State Court had "the inherent power to determine and compel payment of those sums of money" it deemed "reasonable and necessary to carry out its mandated responsibilities," *McCorkle*, 260 Ga. at 316, and such a determination is reviewable only, if at all, by means of a mandamus or protest action. See id. at 317. Thus plaintiff could not sue the court clerk, and cannot pursue Lexis on this appeal, under a theory that either of them is an agent of the state. See id. (dismissing appeal from superior court's certificate authorizing expenses to be paid from the county treasury).

(iii) Plaintiff also argues that the e-filing system established by local rule violates Uniform Superior Court Rule 1.2 (B) in that the system authorizes defendants to collect e-filing fees, which plaintiff characterizes as "illegal." We disagree.

Rule 1.2 (B) provides that after the expiration of local rules in December 2010,

courts may continue to maintain practices and standing orders to regulate the internal processes of the court in matters which are not

13

susceptible to uniformity, which relate only to internal procedure and which do not affect the rights of any party substantially or materially, either to unreasonably delay or deny such rights.

Subsection (E) of the same rule provides that "courts may promulgate standing orders as to matters not addressed by these uniform rules and which are not inconsistent with a uniform rule," including "orders governing electronic filing," as long as "actual notice" of such orders is "provided to all parties[.]"

Rule 1.2 clearly authorizes courts to promulgate "orders governing electronic filing" such as the File & Serve system and fees at issue here. Further, plaintiff's counsel's own affidavit shows that the state court, not Lexis, maintained both the PAT, which the court offered free of charge as an alternative to e-filing, as well as paper filing, which required a scanning fee. For both of these reasons, plaintiff has failed to plead any violation of USCR 1.2 by Lexis. See *Lumpkin v. Johnson*, 270 Ga. 392, 393-395 (1), (2) (509 SE2d 621) (1998) (dismissing murder defendant's petition under USCR Rule 1.2 (B) to assign a related civil action to the same judge presiding over the murder prosecution; there was "no Rule from which the case assignment method adopted by the judges deviates in any substantive manner," and the chief

14

judge's method was consistent with his "discretionary authority . . . to assign a case to a specific trial judge").

(b) Even assuming, moreover, that plaintiff had successfully pled a violation of any of the above statutes or rules, plaintiff has not shown that it is entitled to a private right of action for damages arising from any such alleged violation.

OCGA § 51-1-6 provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." On its face, this statute authorizes suit only when there has been an "alleged breach of a legal duty," whether intentional or negligent, "with some ascertainable standard of conduct." *Wells Fargo Bank v. Jenkins*, 293 Ga. 162, 164 (744 SE2d 686) (2013) (citations omitted). But "'it is well settled that violating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof.'" *State Farm Mut. Auto. Ins. v. Hernandez Auto Painting & Body Works*, 312 Ga. App. 756, 761 (2) (719 SE2d 597) (2011), quoting *Govea v. City of Norcross*, 271 Ga. App. 36, 41 (1) (608 SE2d 677) (2004). "Rather, the statutory text must expressly provide a private cause of action." *State Farm*, 312

15

Ga. App. at 761 (2); see also *Anthony v. American Gen. Financial Svcs.*, 287 Ga. 448, 455 (2) (697 SE2d 166) (2010) (even the violation of a criminal statute "'does not create a civil cause of action for damages in favor of the victim or anyone else,'" quoting *Murphy v. Bajjani*, 282 Ga. 197, 201 (2) (647 SE2d 54) (2007)).

None of the statutes or rules cited by plaintiff provides a private cause of action for damages arising from any violation of the respective statute or rule. It follows that plaintiff cannot maintain such a cause of action in this suit and that the trial court did not err when it dismissed this portion of the second amended complaint.

2. Plaintiff also argues that the combination of Lexis's e-filing and other fees and its "prohibition" on paper filing created an "unreasonable barrier" on plaintiff's right to access to the courts guaranteed by Art. I, Sec. I, Para. XII of the Georgia Constitution as well as OCGA § 1-2-6 (a) (6).[9] We disagree.

---

[9] The Court of Appeals has jurisdiction over a question involving the construction of the Georgia Constitution only if a trial court has "specifically or directly pass[ed] upon" the application of "unquestioned and unambiguous provisions of the state Constitution to a given state of facts and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of Georgia or the Supreme Court of the United States." *City of Decatur v. DeKalb County*, 284 Ga. 434, 436 (2) (668 SE2d 247) (2008), citing 1983 Ga. Const., Art. VI, Sec. VI, Par. II.

16

Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 provides that "[n]o person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." OCGA § 1-2-6 (a) (6) likewise provides that "[t]he rights of citizens include . . . [t]he right to appeal to the courts." The trial court concluded that plaintiff had failed to state a claim under this paragraph of the Georgia Constitution.

The Georgia Supreme Court has recently repeated that "Art. I, Sec. I, Par. XII was never intended to provide a right of access to the courts, but was intended to provide only a right of choice between self-representation and representation by counsel." *Smith v. Baptiste*, 287 Ga. 23, 24 (1) (694 SE2d 83) (2010), citing *Couch v. Parker*, 280 Ga. 580, 581 (1) (630 SE2d 364) (2006); see also *Santana v. Ga. Power Co.*, 269 Ga. 127, 129 (4) (498 SE2d 521) (1998) (Art. I, § 1, Par. XII "is a right of choice' between self-representation and representation by counsel provision, and not an 'access to the courts' provision") (citations and punctuation omitted); *State of Ga. v. Moseley*, 263 Ga. 680, 682 (3) (436 SE2d 632) (1993); *Nelms v. Georgian Manor Condo. Assn.*, 253 Ga. 410, 412-413 (2), (3) (321 SE2d 330) (1984); *Bloomfield v. Liggett & Myers, Inc.*, 230 Ga. 484 (198 SE2d 144) (1973).

As our Supreme Court has also noted, these authorities establish that "there is no express constitutional 'right of access to the courts' under the Georgia Constitution." *Couch*, 280 Ga. at 581 (1). Nor is this Court authorized to create or construe an "implied" right of access to the courts in the absence of Georgia authority establishing such a right. See id. (declining to find that plaintiffs could claim that a right of access to the courts was implicated by their efforts to seek an administrative appeal). Further, any claim that the e-filing fees collected by Lexis were so "unreasonable" as to deprive plaintiff of court access is a legal conclusion that cannot by itself save the complaint from dismissal. See *Northway v. Allen*, 291 Ga. 227, 229-230 (728 SE2d 624) (2012) (reversing denial of motion to dismiss when petition to remove mayor alleged only that a mayor had refused to resign and had not alleged other facts sufficient to show that the mayor had abused his powers).

For all these reasons, the trial court did not err when it granted the motion to dismiss plaintiff's claims under the Georgia Constitution and OCGA § 1-2-6 (a) (6).

3. Plaintiff also asserts that it has stated viable claims for the common-law torts of conversion and money had and received as well as civil conspiracy. We disagree.

(a) The second amended complaint alleges that the state court and Lexis have and "will continue to convert to their own use sums unlawfully collected from

18

[p]laintiff and the Class pursuant to the e-filing scheme," and also that the court and Lexis are "indebted to [p]laintiff and the Class . . . for money had and received to be paid . . . as civil restitution, a refund, and[/]or damages." But plaintiff has not argued on appeal that these common-law claims have any basis other than the alleged statutory violations discussed and rejected above. Further, a party cannot survive a motion to dismiss merely by recasting alleged statutory or constitutional violations as torts. See *Troncalli v. Jones*, 237 Ga. App. 10, 12-13 (1) (514 SE2d 478) (1999) (reversing jury verdict as to civil stalking claim because there is no cause of action for stalking simply because a criminal statute prohibits it); *Rolleston v. Huie*, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990) (no tort remedy available under OCGA § 16-8-16 for the allegedly unlawful attempt to disseminate information tending to impair appellant's business).

(b) A claim of civil conspiracy[10] requires a pleading of facts showing that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (6) (573 SE2d 455) (2002) (citation omitted). "Absent the underlying tort, there can be no liability for

---

[10] Although the second amended complaint does not include a separate conspiracy count, it does allege that the state court and Lexis "conspired" to make e-filing mandatory, and the trial court ruled on the viability of that claim.

civil conspiracy." Id. (citation and punctuation omitted). Because plaintiff has not pled facts establishing any common-law tort, its claim for civil conspiracy must also fail. See id. (affirming grant of summary judgment as to claim for conspiracy to defraud when underlying fraud claim failed).

4. In light of our determination that plaintiff has failed to state a claim for any of its causes of action, we need not reach the questions whether Lexis should have the benefit of Fulton County's sovereign immunity from suit and whether various Fulton County clerks are indispensable parties to this action.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*